**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| STARS DESIGN GROUP, INC., )<br>)<br>    Plaintiff, )<br>)<br>)<br>v. )<br>)<br>SUN COAST MERCHANDISE )<br>CORPORATION d/b/a SUNSCOPE, )<br>Serve:117 S. Lexington Street )<br>    Harrisonville, MO 64701 )<br>and )<br>)<br>STAPLES PROMOTIONAL PRODUCTS, )<br>a division of STAPLES CONTRACT AND )<br>COMMERCIAL, INC., )<br>Serve: 221 Bolivar Street )<br>    Jefferson City, MO 65101 )<br>)<br>and )<br>)<br>JEFF A. BACK, )<br>Serve: 1029 Woodgate Drive )<br>    Kirkwood, Mo 63122 )<br>)<br>    Defendants. ) | Case No._____<br><br>**Jury Trial Demanded** |

**VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff Stars Design Group, Inc. ("Stars"), by and through its undersigned counsel, and for its Complaint for Damages and Injunctive Relief against Defendants Sun Coast Merchandise Corporation d/b/a Sunscope ("Sun Coast"), Staples Promotional Products a division of Staples Contact and Commercial, Inc. ("Staples"), and Jeff A. Back ("Back") (Sun Coast, Staples and Back are referred to collectively herein as "Defendants"), states as follows:

**INTRODUCTION**

1.      After working at Stars for approximately twelve (12) years, Back quit on May 23, 2023, stating he planned to "retire." Instead, Back immediately went to work for Stars' direct

1

competitor, Sun Coast, under a plan in the works for months, taking nearly ten million dollars ($10,000,000) in annual revenue from Stars' customers to his new employer. This action is the result of Stars' recent discovery that Back, while he was employed by Stars, engaged in systematic, unauthorized taking and use of Stars' trade secrets, intellectual property, confidential documents and other proprietary information which he supplied to Sun Coast. Sun Coast is now improperly competing and servicing Stars' former customers, including Staples, using the confidential information, intellectual property and trade secrets that Back misappropriated on his way out the door. Moreover, Staples has knowingly purchased products from Sun Coast which it knew were created using Stars trade secrets and intellectual property, acquired through improper means, and resold those products to its customer, Snap-On Tools. Stars seeks to enjoin Defendants' ongoing use of its misappropriated intellectual property, to stop the significant harm they are already causing, and to prevent further losses.

<u>**PARTIES, JURISDICTION AND VENUE**</u>

2.    Plaintiff Stars is a Missouri corporation with its principal place of business located at 1301 Gravois Ave., St. Louis, MO 63104.

3.    Although a California corporation, this Court has personal jurisdiction over Sun Coast pursuant to the Missouri Long-Arm Statute, Mo. Rev. Stat. §560.500, under principles of specific and general jurisdiction as Sun Coast has committed tortious acts in the State of Missouri, operates business offices located in the State of Missouri, conducts significant business in the State of Missouri, employs Defendant Back who conduct business on its behalf from the State of Missouri, and has sufficient minimum contacts with the State of Missouri such that exercise of jurisdiction over Sun Coast does not offend tradition notions of fair play and substantial justice.

4.    Although a Kansas corporation, this Court has personal jurisdiction over Staples pursuant to the Missouri Long-Arm Statute, Mo. Rev. Stat. §560.500, under principles of specific

2

and general jurisdiction as Staples has committed tortious acts in the State of Missouri, operates business offices located in the State of Missouri, conducts significant business in the State of Missouri, employs Patricia Ponce Mendoza ("Mendoza") who conducts business on its behalf from her home office in St. Charles County, Missouri, and has sufficient minimum contacts with the State of Missouri such that exercise of jurisdiction over Staples does not offend tradition notions of fair play and substantial justice.

5.    Defendant Back is an individual residing in Kirkwood, St. Louis County, Missouri.

6.    This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. §1331 because Stars asserts federal claims under the Defend Trade Secrets Act of 2016, 18 U.S.C §§1832-1839 (the "DTSA") and the U.S. Copyright Act of 1976, 17 U.S.C. §501 *et seq*.

7.    This Court also has supplemental jurisdiction over Stars' remaining claims pursuant to 28 U.S.C. §1367, because those claims form a part of the same case or controversy as Stars' federal question claims.

8.    Venue is proper in this Court because a substantial part of the actions giving rise to this lawsuit occurred in the Eastern District of Missouri.

## FACTS COMMON TO ALL COUNTS

Stars and Its Former Employees and Customers, Now Working with Its Competitor, Sun Coast

9.    Stars is an apparel design and manufacturing company founded in 2000.

10.    Based in Missouri, Stars maintains a network of international factories specializing in production of a diverse array of custom apparel.

11.    Today, Stars develops apparel programs for brands and businesses and offers a full-service design staff, development and sourcing teams, and access to Stars' relationships with manufacturers in fourteen (14) countries.

12.    Sun Coast is a direct competitor of Stars.

3

13.    Sun Coast, doing business as Sunscope, is a manufacturer, importer and supplier of promotional products, including apparel.

14.    Stars' former employees, Back, Casey Zona, Matt Hencke, Cory Watkins, Zachary Ufkes, Raven Pulliam, Revanth Karthik, Madu K G, Lijo Jose, and S. Senkottaiyan, ("Stars' Former Employees") are now employed by Sun Coast.

15.    Specifically:

a.    Back was employed by Stars from September 1, 2011 to May 23, 2023 as its Senior Vice President of Merchandising/GMM (General Merchandise Manager), primarily responsible for managing all staff on Stars' pre-production teams, including decision-making authority on factory allocation, costing, quality control, production and timely delivery of Stars' products.  By virtue of his employment, Back held the highest level of permissions for access to Stars' confidential information, other than Stars' CEO.  Back announced his resignation from Stars on May 9, 2023, stating he planned to "retire."

b.    Casey Zona ("Zona"), Stars' former Vice President of Client Integration, was primarily responsible for managing, maintaining and growing Stars' key customer accounts, including Staples. By virtue of her employment, Zona had access to detailed financial information including costing of Stars' products.  Zona prepared costing analysis, which was provided to Back, and designed to maximize profitability for Stars, yet meet its clients' goals.  Zona resigned from Stars simultaneously with Back, on May 9, 2023.  Upon leaving Stars on May 23, 2023, both Back and Zona immediately went to work for Sun Coast.

c.    Raven Pulliam ("Pulliam"), Stars' former Merchandiser, resigned from Stars approximately one week after Back and Zona.  Pulliam now works for Sun Coast.

4

d. Revanth Karthik ("Karthik"), Stars' former Director of Merchandising, resigned from Stars shortly thereafter in June 2023. Karthik now works for Sun Coast.

e. Cory Watkins ("Watkins"), Stars' former Logistics Manager, resigned from his employment with Stars on August 4, 2023, and his last day at Stars was September 20, 2023. Watkins now works for Sun Coast.

f. Matt Hencke ("Hencke"), who was in sales at Stars and also sits on its board of directors, never gave notice of his resignation from Stars but now works for Sun Coast.

g. Several other Stars' Former Employees, responsible for merchandising and logistics, including employees from Bangalore, India, left Stars from June 2023 through February 2024, and now work for Sun Coast.

16. Back, in furtherance of his employment with Sun Coast and for its benefit, recruited Stars' Former Employees in the United States and India in order to steal the Staples business, as well as other customers, from Stars.

17. Indeed, as set forth more fully below, using Stars' trade secrets and confidential information learned during his employment with Stars, Back, Stars' Former Employees and their new employer, Sun Coast, now do business with Staples and other former customers of Stars including Milwaukee Tool, BRP, Allison Putnam and Supermex (collectively Stars' "Former Customers").

18. The loss of business to Stars, and corresponding unjust enrichment to Sun Coast, by virtue of the wrongful diversion of Stars' Former Customers to Sun Coast is approximately Ten Million Dollars ($10,000,000.00) in revenue annually.

<u>Stars' Trade Secrets</u>

5

19.     In the course of its businesses, Stars developed, generated, and maintained substantial confidential and proprietary information, including trade secrets, which are critical to maintaining Stars' competitive edge over other enterprises not in possession of such information.

20.     Such confidential information and trade secrets include but are not limited to: product designs and specification, information related to Stars' operations, personnel, research and development efforts, material sourcing, costs, pricing, pricing methodologies and profit margins, marketing strategies, customers (including customer lists and customer data), suppliers, vendors, referral sources, sales, marketing and business plans and strategies, inventions, concepts, ideas, designs, artwork and market research (Stars' "Trade Secrets").

21.     Stars' Trade Secrets are not generally known to, or readily ascertainable through proper means, by individuals or entities outside of Stars.

22.     Stars has invested significant time, effort, and expense in establishing and developing their Trade Secrets, and in developing valuable and extensive goodwill and long-standing lucrative contacts and business relationships with Stars' customers through the use of such Trade Secrets.

23.     Thus, Stars derives an economic benefit from its Trade Secrets not being readily known or ascertainable through proper means by persons outside of the Stars organization.

24.     Stars devotes significant efforts and resources to protecting its Trade Secrets from unauthorized possession, use, or disclosure. Among other precautions, Stars: (1) restricts access to such information to those employees with a need to know; (2) requires any sharing of such information to be via email to those employees with a need to know or via shared folders with appropriate permission levels; and (3) uses password-protected computers, servers, and cloud software to store and safeguard such information.

6

25. Stars also specifically protects its Trade Secrets by requiring its customers to purchase product specifications for custom apparel produced by Stars.

26. Specifically, Stars' products are produced using individually created technical product specifications ("Tech Packs") which are 20–30-page documents unique to each garment designed by Stars.

27. Stars' Tech Packs contain detailed instructions for the manufacture of its products including information regarding sizing, fit, materials, colors, designs and artwork.

28. Tech Packs are complicated and time consuming to create and no universal standard or template is used.

29. Stars uses "Be Product" software for development of its Tech Packs. Access to the Be Product software is password protected and Stars' employees are only provided with passwords on a need-to-know basis.

30. The Be Product software generates unique Stars' style codes, specific to each Stars designed product, which are included on Stars' Tech Packs.

31. Only if Stars receives a purchase order, or other written agreement for a garment, does Stars' purchasing customer obtain rights to the Tech Pack for that specific garment. A customer that does not issue a purchase order, or does not pay for the Tech Pack, has no rights in Stars' Tech Packs.

32. In addition to requiring a purchase order for the transfer of ownership of its Tech Packs, Stars protects its Trade Secrets by establishing policies and procedures in its Employee Handbook. The Star's Employee Handbook is attached hereto as Exhibit A and incorporated herein by reference.

33. Stars' Former Employees received and acknowledged the policies and procedures contained in Stars' Employee Handbook.

7

34.    The Employee Handbook contained the following related to the Disclosure and or Use of Confidential Information:

> In the normal course of business, employees may be given or may acquire information about the business of STARS, its affiliates, its clients, and its employees that is not available to the general public. This information is confidential and is considered the exclusive property of STARS. **The term "confidential information" includes, but is not limited to, financial data, business plans and strategies, artwork, technical renderings, "know-how" product [and] client lists, computer software programs, and employee information.** All employees are responsible for respecting and maintaining the confidential nature of such information.
>
> **Upon separation of employment for any reason, all confidential information must remain in the possession of STARS, and all employees are to return to STARS all originals and copies of such confidential information.**
>
> If an employee has any questions about whether information is confidential, he or she should contact a member of management. This policy is not intended to supersede or modify any written agreements employees have entered into with the organization to protect confidential property or information.

35.    By virtue of his employment with Stars, Back had access to Stars' Trade Secrets, including but not limited to Tech Packs, customer lists, customer contact information, marketing strategies, product information, customized product development, designs, costing, internal pricing structures and pricing strategies that are not shared with customers.

36.    Stars' Trade Secrets derive economic value from not being generally known to, and not being readily ascertainable by, other persons who can obtain economic value from their disclosure or use, and are the subject of efforts that are reasonable under the circumstances to maintain their secrecy.

<u>Stars' Other Intellectual Property</u>

37.    In the course of its work for customers, Stars creates and designs artwork ("Stars' Artwork") for its custom apparel. Stars' Artwork incorporates design elements which can be

8

perceived as works of art separate from the clothing items themselves and which qualify as protectable pictorial, graphic or sculptural works when fixed in a tangible medium of expression.

38.    The Stars' Artwork is created by Stars' employees and, subject to an express written agreement to the contrary, all right, title and interest in and to the Stars Artwork is owned by Stars, including all rights protected under the U.S. Copyright Act of 1976, 17 U.S.C. § 501 *et seq*.

39.    The U.S. Copyright Office has granted Registration Number Vau 1-524-364 with an effective date of April 24, 2024 for three specific designs that are example of the Stars' Artwork. Attached hereto as Exhibit B is a true and correct copy of the registration and the registered designs.

40.    As the owner of the copyright in and to the Stars Artwork, Stars has the exclusive right to reproduce, distribute, display and prepare derivative works based upon the Stars Artwork.

41.    Only if Stars receives a purchase order or other written agreement for a garment that incorporates Stars Artwork, does Stars' purchasing customer obtain any rights to the Stars Artwork. A customer that didn't issue a purchase order, or didn't pay for the Stars Artwork, has no rights in the Stars Artwork.

42.    For example, the ownership of the Stars Artwork, Trade Secrets and other intellectual property is confirmed by a 2009 supplier agreement between Stars and Staples.  A true and accurate copy of the terms and conditions of the supplier agreement (the "Staples Terms and Conditions") is attached hereto as Exhibit C and incorporated herein by reference.

43.    Pursuant to paragraph 4 of the Staples Terms and Conditions, Staples and Stars agreed that "[a]ll material or information produced and ideas or processes conceived or developed by [Stars] ***under a purchase order*** for custom orders submitted by [Staples], including, without limitation, designs, adaptations, documentation, inventions, concepts, methods and techniques are

9

"works for hire'" and all related copyrights, trade secrets and other intellectual property is "owned and/or authorized solely by [Staples] and /or its customers." Exhibit C, para. 4 (emphasis supplied).

44.     The existence of the Staples Terms and Conditions confirms that all Stars' Artwork and other intellectual property, including Tech Packs, is owned by Stars absent a purchase order or other written agreement to the contrary.

Back Misappropriates Stars' Trade Secrets and Other Intellectual Property

45.     By virtue of his employment with Stars, Back had access to Stars' Trade Secrets and other intellectual property, including Stars' Artwork and Tech Packs.

46.     Unbeknownst to Stars, Back, during his employment with Stars, began plans to wrongfully compete against Stars and steal its Trade Secrets, intellectual property and other confidential and proprietary information for the benefit of his new employer, Sun Coast.

47.     On January 13, 2023, in an email with the subject "Staples Margin FY2023" Back obtained from Tim Valley, Star' former Chief Financial Officer, information and documents showing margins for Stars' former customers Staples and Allison Putnam.  The attachments to the January 13, 2023 email contain Stars 2023 and 2024 sales forecasts and pricing and profit information. Back emailed all such information to himself the same day it was received.

48.     On January 25, 2023, in an email with the subject "Prx work," Back emailed himself detailed pricing information for Stars' former customer Milwaukee Tool in attachments labeled MILWAUKEE TOOL WORKWEAR FOB 1-25-23 FALL 2023 THD & NON HD.xlsm and MET FALL 2024 WW FOB 1-25-23.xlsm.

49.     On February 24, 2023, Back forwarded "pricing work" for Stars' Former Customers Milwaukee Tool, Staples/Snap-On and Boot Barn in attachments labeled BOOT BARN F23-S24 CJ AND BP BLZRS-2-13-23JB.xlsm; STAPLES-SNAP-ON RA JKT F-W 2023-FINAL 11-22-

10

22.xlsm; MET FALL 2024 WW FOB 2-21-23JAB.xlsm, to his personal email address (backjs93@msn.com).

50.     On March 23, 2023, Back forwarded a spreadsheet containing Fall 2023 Supermex Golf styles and pricing to himself.

51.     On April 4, 2023, Back requested and obtained a copy of Stars' Country of Origin (COO) Report – Factory Cost for Customers Invoiced in FY2023 and Uninvoiced as of 4-1-2023.xlsx to backjs93@msn.com.  The COO Report contained Stars' factory costs for all factories producing products for Stars' customers in 2023.

52.     On April 10, 2023, Back forwarded a copy of Stars' general ledger transaction report to his personal email address (backjs93@msn.com).

53.     On April 12, 2023, Back forwarded a copy of Stars' Artwork for Mammoth and Fireball Whisky apparel to backjs93@msn.com.

54.     On April 18, 2023, in an email with the subject "HRC Pricing –Bret", Back forwarded himself pricing for Stars' former customer Hard Rock Café in attachments labeled HRC CORE DENIM 4-18-23JB.xlsm; HRGC ROCKER CLOSET 4-18-23JB.xlsm; and HRGC SIGNATURE SKULLS 4-18-23JB.xlsm.

55.     On May 5, 2023, Back accessed and forwarded a copy of Stars' 2024 sales forecast his personal email address (backjs93@msn.com).

56.     The foregoing documents contain Stars' Trade Secrets and information such as total sales on accounts, margin percentage on accounts, gross profits on accounts, and overhead allocation, i.e., the exact information needed to compete against Stars and attempt to undercut them on price with customers.

57.     There was no legitimate business purpose for Back to access and/or send the above-mentioned emails containing Trade Secrets to his personal email account.

11

58.     At the conclusion of his employment with Stars, and despite demand, Back failed and refused to return his Stars issued laptop computer, which contained Trade Secrets, Tech Packs, Stars' Artwork, and other intellectual property and had access to Stars' systems.

59.     To date, Back is still in possession of his Stars issued laptop computer and the Trade Secrets, Tech Packs, Stars Artwork, and other confidential and proprietary information contained therein.

60.     Despite demand, Back has failed and refused to return Stars' laptop issued to Back.

61.     Upon information and belief, Back continues to have access all Stars' information (including the foregoing emails and attachments) contained therein.

<u>Staples and Snap-On Tools Hoodies and Jackets</u>

62.     Over the course of many years, Staples purchased Snap-On Tools branded products from Stars, some of which incorporated Stars' Artwork.  Staples then sold these products to Snap-On.

63.     Stars' relationship with Staples resulted in approximately seven million dollars ($7,000,000) in annual revenue.

64.     As early as July 2022, Stars was working with Staples employee, Mendoza, Staples' Strategic Account Manager, regarding the design and procurement of Snap On promotional hoodies.

65.      Stars produced Tech Packs and Stars' Artwork for Snap On branded hoodies that incorporated car, truck and motorcycle designs protected by copyright law, owned by Stars and for which Registration Number Vau 1-524-364 as depicted in <u>Exhibit B</u> hereto was issued by the U.S. Copyright Office ("Vehicle Graphic Hoodies").

66.     These designs constituted Stars' Artwork and all right, title, and interest in and to said designs, including all copyright interests, are owned exclusively by Stars.

67.     Stars provided the Tech Packs and Stars' Artwork to Mendoza with the understanding that Staples would purchase the Vehicle Graphic Hoodies from Stars.

68.     Stars provided pricing information to Mendoza and sought her approval so that the Vehicle Graphic Hoodies could be ordered for sampling.

69.     Mendoza provided her approval, and the Vehicle Graphic Hoodie samples were sent to her Staples home office located at 125 Huntington Park, St. Charles, Missouri 63301.

70.     In February 2023, Zona requested a purchase order from Mendoza for the Vehicle Graphic Hoodies.  Staples did not furnish a purchase order.

71.     On March 3, 2023, Back downloaded the Tech Pack for the Vehicle Graphic Hoodies from Stars' password protected server and emailed the material from Stars email system to his personal email.

72.     Stars' Vehicle Graphic Hoodie Tech Pack, which was wrongfully taken by Back, contained the following information:

a.      Style Name (Vehicle Graphic Hoodie);

b.      Style Number (SNF23KT0171) generated from Stars' Be Product software;

c.      Color Name (Grape Leaf, Tornado, Kangaroo), and

d.      Stars' Artwork for the Vehicle Graphic Hoodies (see below).

13







73.    In April 2023, while Back, Zona and Karthick were employed by Stars, its competitor, Sun Coast, issued purchase order number 04/23/40354 to Stars' factory partner for the manufacture and delivery of the Vehicle Graphic Hoodies.

74.    Sun Coast has admitted that Staples provided it with the sample Vehicle Graphic Hoodies developed by Stars and that those garments incorporate the Stars' Artwork. *See,* correspondence from Sun Coast's Attorney, Steven Shapiro, dated April 17, 2024 (the "Sun Coast Admission") stating "[i]n reference to the hoodie order of approximately 15,000 hoodies for Snap-On via Staples, Sun Coast was provided exemplar hoodies by Staples." A true and accurate copy of the Sun Coast Admission is attached hereto as <u>Exhibit D</u> and incorporated herein.

75.    However, it is clear from the International Bill of Lading for shipment of the Vehicle Graphic Hoodies that Sun Coast was also provided Stars' Vehicle Graphic Hoodie Tech Pack which was wrongfully misappropriated by Back. *See* Scanwell Container Line LTD International Bill of Lading attached hereto as <u>Exhibit E</u> (the "Bill of Lading") and incorporated herein.

15

76.    As shown below, the Bill of Lading for the Vehicle Graphic Hoodies references the identical style name (Vehicle Graphic Hoodie); unique internal Style Number (SNF23KT0171) and color names (Grape Leaf, Tornado, Kangaroo) as contained on the Stars' Tech Pack.



## Scanwell Logistics India (Pvt) Ltd.

### Bangalore Branch

"Prestige Terminus- 2" Unit No. 210 & 211, 2nd Floor, No. 14, Old Airport Exit Road, Bangalore - 560017, India

Tel.: +91-80-4346-9999  Fax: +91-80-4346-9901

## ATTACH LIST

**House B/L#: BLRSEA5502**                                                                                     Page 1 of 1

```
HMMU6253813 /1311858 /40' HQ /1,524CARTON(S) /10,668.000 KGS /67.128 CBM /    CY/CY

                              SHIPPER'S LOAD, COUNT AND SEALED.
                              SAID TO CONTAIN:
                              "THIS SHIPMENT CONTAINS NO SOLID WOOD PACKING MATERIALS."

1 TO  312              1,524 MENS KNIT 80% COTTON 20% POLYESTER PULLOVER HOODIE    10,668.000-KGS      67.128-CBM
1 TO  345           CARTON(S) PO NO:- 7262439,7262486,7262454,7262384 & 7262381
1 TO  141                     SUNSCOPE PO # 04/23/40354                                   FREIGHT COLLECT
1 TO  147                     STYLE NAME:- VEHICLE GRAPHIC HOODIE
1 TO  579                     STYLE NO:- SNF23KT0171
                              HS CODE:- 6110.20.20.69
1524 CARTONS                  COLOR:- GRAPE LEAF, TORNADO , KANGAROO
                              QUANTITY:- 15240 PCS
                              INVOICE NO:- CF 113/23-24 DT.17.07.2023
                              SB NO:- 2718713 DT.26.07.2023
                              NET WT:- 8382.00 KGS

                              SHIP TO ADDRESS:-
                              SUN COAST MERCHANDISE CORP.
                              6405 RANDOLPH ST COMMERCE, CA 90040, USA
                              Tel: 323-720-9700, Fax: 323-720-1988

                              TOTAL: ONE THOUSAND FIVE HUNDRED TWENTY FOUR (1,524) CARTON(S) ONLY.
```

77.    Although Sun Coast and Staples were aware that Stars developed the Vehicle Graphic Hoodies– from art and technical design to fabrication and delivery of samples to Staples - Stars never received a purchase order from Staples for the Snap On Vehicle Graphic Hoodies.

78.    Upon information and belief, Staples and/or Back reproduced the Stars' Artwork incorporated in the Vehicle Graphic Hoodies and distributed the Stars' Artwork and Vehicle Graphic Hoodie Tech Pack to Sun Coast.

79.    While Back was still employed by Stars, Staples purchased the *identical* Snap On Vehicle Graphic Hoodies through Sun Coast. *See*, Exhibit E, Bill of Lading, confirming the

16

shipment of the Vehicle Graphic Hoodies (with matching Stars style name, style number, and colors) with reference to a Sun Coast purchase order.

80.     The Vehicle Graphic Hoodies were purchased by Staples, through Sun Coast, with direct knowledge that they were developed using Stars' Artwork, graphics, and Tech Packs.

81.     Staples then further disseminated these materials to Snap On, earning revenue for its sale of Stars generated products purchased from Sun Coast.

82.     Today, Vehicle Graphic Hoodies are available in the secondary market, including on eBay, as depicted below.





83.     Stars has obtained the Vehicle Graphic Hoodies from ebay and the label contains the precise Stars' Style Number (SNF23KT0171), generated through Stars' Be Product software, contained on Stars' Tech Pack, and referenced on the Bill of Lading for shipment to Sun Coast.

84.     A sticker on the outside packaging of the Vehicle Graphic Hoodies contains the same identifying information from the Stars' Tech Pack and the Sun Coast Bill of Lading: Style (Vehicle Graphic Hoodie); Style Number (SNF23KT0171) and color names (Grape Leaf, Tornado, Kangaroo).

85.     A tag on the inside of the Vehicle Graphic Hoodies states:

**Manufactured by**
Sun Coast Merchandise Corp
6405 Randolph Street
Commerce, CA 90049

**Distributed by**
Staples Promotional Products
7500 W. 110 St.
Overland Park, KS 66210

18

86.     Upon information and belief, similar misconduct has occurred with respect to Stars' designed Snap-On jackets.

87.     On March 2, 2023, one day before he stole Stars' Tech Pack for the Vehicle Graphic Hoodies, Back forwarded to his personal email address, detailed material and fabric specifications and pricing for a Snap-On jacket program developed by Stars (the "Jackets").

88.     Shortly thereafter, on May 18, 2023 (prior to the Former Employees departure from Stars, but after their resignation), Mendoza along with Staples employees Theresa Vail, Courtney Scott, Thomas Goddard and Stuart Wright had a meeting with Stars' employees, including Back, to discuss the Jackets.

89.     However, in November 2023, just a few days before Thanksgiving and to Stars' surprise, Staples informed Stars that it had voluntarily terminated their contract.

90.     On January 29, 2024, Staples Global Project and Solutions Manager, Ruiping Ramboldt, emailed Back at jeffb@sunscopeusa.com regarding "2023 Snap-On Jacket Post Mortem – Action Items from the meeting – Need Your Feedback" ("Staples Jacket Correspondence").  A true and accurate copy of the Staples Jacket Correspondence dated January 29, 2024 is attached hereto as Exhibit F and incorporated herein.

91.     The Staples Jacket Correspondence inadvertently copied Stars' former employee, Cory Watkins, at his Stars email address.

92.     The Staples Jacket Correspondence definitively establishes that Staples is now working with Sun Coast to produce the Jackets.

93.     Knowing Stars may uncover his wrongdoing, on January 31, 2024, Back responded to Staples' Jacket Correspondence and reminded them to be "triple careful" not to include anyone from Stars on their emails. See email dated January 31, 2024, attached hereto as Exhibit G and incorporated herein by reference.

19

94.     Still, on February 7, 2024, Staples again inadvertently copied Watkins (at his Stars' email) on correspondence with the subject "2024 Snap-on Jackets Planning – Tomorrow's Call & Delivery Schedule" requesting delivery of the Jackets in July and August, 2024. *See* email dated February 7, 2024, <u>Exhibit H</u> and incorporated herein by reference.

95.     Back and Sun Coast knowingly used, are using, and intend to continue to use Stars' Trade Secrets, Stars' Artwork, and its confidential and proprietary business information to improperly compete against Stars, including but not limited to selling the Vehicle Graphic Hoodies and Jackets to Staples.

96.     Staples knowingly used, is using, and intends to continue to use Stars' Trade Secrets, Stars' Artwork,  and its confidential and proprietary business information to enrich itself at Stars expense, including but not limited to procuring the Vehicle Graphic Hoodies and Jackets from Sun Coast and re-selling them to Snap-On.

97.     But for Back's employment with Stars, Back would not have any information related to Stars' work on behalf of Staples, Staples needs for the Vehicle Graphic Hoodies or Jackets, or the knowledge and relationships with factories to service the Staples business.

98.     Upon information and belief, the Jackets are currently in production by Stars' factory partners overseas and, as with the Vehicle Graphic Hoodies, Sun Coast intends to sell the Jackets to Staples who will, in turn, sell the Jackets to Snap-On.

99.     Because Back misappropriated Stars' Trade Secrets including detailed costing, pricing and margins information, he is now in a position to undercut Stars on pricing through his employment at Sun Coast.

**COUNT I – Damages for Defendants' Misappropriation of Trade Secrets**
**Under the Defend Trade Secrets Act**
*(Stars v. Sun Coast, Staples and Back)*

100.    Stars incorporates by reference and realleges the foregoing allegations as if fully set forth herein.

101.    Stars operates its business in interstate commerce across the United States.

102.    Stars' Trade Secrets are related to products and services used in, or intended for use in, interstate commerce.

103.    As set forth above, Defendants improperly acquired, retained and are improperly using, and may continue to use, Stars' confidential and proprietary information and Trade Secrets to compete with Stars in a matter that violates the DTSA.

104.    Stars' Trade Secrets, identified herein, qualify as "trade secrets" under the DTSA, as defined under 18 U.S.C. § 1839(3).

105.    Defendants have misappropriated Stars' Trade Secrets in that they acquired the Trade Secrets while knowing or having reason to know that they did so through improper means and have acquired or derived knowledge of Stars' Trade Secrets and disclosed and used them without Stars' consent

106.    Defendants' violations of the DTSA have damaged Stars and Stars will continue to sustain monetary damages, including lost profits, because of Defendants' conduct.

107.    Stars is entitled to full compensatory and consequential damages, as well as attorneys' fees, costs and expenses incurred herein.

108.    Because Defendants' actions have been willful and malicious, Stars is entitled to exemplary damages of no more than twice the amount of damages for any actual loss and unjust enrichment.

21

WHEREFORE Stars respectfully prays that this Court enter an order in its favor, and against Defendants, jointly and severally, providing monetary damages including lost profits; exemplary damages of no more than twice the amount of damages for any actual loss and any unjust enrichment pursuant to 18 U.S.C. §1836(b)(3)(C); attorneys' fees, costs and expenses pursuant to 18 U.S.C. §1836(b)(3)(D); pre-judgment interest at the lawful rate, and for such other and further relief as this Court deems just and proper.

**COUNT II – Damages for Defendants' Misappropriation of Trade Secrets**
**Under the Missouri Uniform Trade Secrets Act**
**(*Stars v. Sun Coast, Staples and Back*)**

109.    Stars incorporates by reference and realleges the foregoing allegations as if fully set forth herein.

110.    By virtue of his employment with Stars, Back had access to and acquired knowledge of Stars' confidential and proprietary information, including its Trade Secrets as defined under the Missouri Uniform Trade Secrets Act, Mo. Rev. Stat. §§ 417.450-417.467 (the "MUTSA"), including but not limited to Stars' Tech Packs, Stars' Artwork, customized product development for customers, costing, pricing structures, pricing strategies, marketing strategies and financial data.

111.    Such information derives independent economic value from not being known to, and not being readily ascertainable by proper means by, other persons who could obtain economic value from the information's disclosure or use.

112.    As detailed herein, Stars has taken reasonable precautions to protect the secrecy of such information.

113.    Accordingly, this information constitutes protectable trade secrets under the MUTSA.

114.     Defendants acted and continue to act, in conspiracy with one another to commit violations of the MUTSA by disclosing and using Stars' Trade Secrets, without Stars consent, when they knew or had reason to know that the knowledge of the Trade Secrets was acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use, derived from or through Defendants who used improper means to acquire the Trade Secrets.

115.     In a manner that violates the MUTSA, Defendants acquired, and are using and will continue to use, the confidential and proprietary information and Trade Secrets to compete with Stars.

116.     In a manner that violates the MUTSA, Defendants are unlawfully using, to Stars disadvantage, their knowledge of the Trade Secrets to unjustly enrich themselves at Stars expense.

117.     Stars has been damaged by Defendants conduct as alleged herein.

118.     Stars is entitled to full compensatory and consequential damages pursuant to Mo. Stat. § 417.457, as well as attorneys' fees, costs and expenses incurred herein.

WHEREFORE Stars respectfully prays that this Court enter an order in its favor, and against Defendants, jointly and severally, providing monetary damages including lost profits to Stars, for attorneys fees and costs, for injunctive relief prohibiting Defendants from disclosing or using any Trade Secrets belonging to Stars, for prejudgment interest at the lawful rate, and for such other and further relief as the Court deems just and proper.

### COUNT III – Injunctive Relief
#### (*Stars v. Sun Coast, Staples and Back*)

119.     Stars incorporates by reference and realleges the foregoing allegations as if fully set forth herein.

120.    Defendants have used, are using, and inevitably will continue to use, Stars' Trade Secrets, Stars' Artwork, and other confidential and proprietary business information unless enjoined.

121.    Defendants misappropriation of Stars' Trade Secrets, Stars' Artwork, and use of Stars' confidential and proprietary business information causes, and threatens to continue causing, Stars to suffer irreparable harm, including but not limited to loss of clients, loss of reputation and customer goodwill, and loss of its investment in Stars' Artwork, its Trade Secrets and confidential and proprietary business information.

122.    This harm cannot be remedied at law and requires preliminary and permanent injunctive relief prohibiting Defendants from:

    a.   Producing, manufacturing, ordering, selling, using, disclosing, offering or disseminating products developed or derived through the use of Stars Trade Secrets, Stars' Artwork, and other confidential and proprietary business information, including but not limited to the Vehicle Graphic Hoodies and Jackets;

    b.   Soliciting former, current and prospective Stars customers in any way that involves Defendants' use of Stars' Trade Secrets, Stars' Artwork or confidential and proprietary business information;

123.    Stars is entitled to injunctive relief pursuant to 18 U.S.C. §1836(b)(3), restraining and enjoining Defendants, and all those in privity, concert or participation with Defendants, from engaging in wrongful acts under the DTSA.

124.    Under the MUTSA, "[a]ctual or threatened misappropriation may be enjoined" and "in appropriate circumstances, affirmative acts to protect a trade secret may be compelled by Court Order."  Mo. Rev. Stat. §417.455.

125.    In being subject to a preliminary and permanent injunction, Defendants shall suffer no undue prejudice or hardship as compared to that currently suffered by Stars in that Defendants will only be required to forebear from engaging in wrongful activity and violation of the DTSA and MUTSA.

126.    Stars has a probable success on the merits of this request for injunctive relief. WHEREFORE, Stars respectfully requests that this Court enter judgment in favor of Stars and against Back, and for this Court to:

a.  Enter a preliminary and permanent injunction restraining and prohibiting Defendants from further misappropriation of trade secrets and confidential and proprietary business information belonging to Stars;

b.  Enter a preliminary and permanent injunction restraining and prohibiting Defendants from engaging in competitive business for a reasonable period of time to eliminate commercial advantage from the misappropriation;

c.  Enter a preliminary and permanent injunction preventing Defendants from:

   i.   Producing, manufacturing, ordering, selling, using, disclosing, offering or disseminating products developed or derived through the use of Stars Trade Secrets or Stars' Artwork including but not limited to the Vehicle Graphic Hoodies and Jackets;

   ii.  Soliciting former, current and prospective Stars customers in any way that involves Defendants' use of Stars' Trade Secrets and confidential and proprietary business information;

d.  Enter a preliminary and permanent injunction requiring Defendants to:

25

iii.    Cease production, sale or dissemination of all products developed or derived through the use of Stars' Trade Secrets or Stars' Artwork including but not limited to the Vehicle Graphic Hoodies and Jackets;

iv.    Provide an accounting of all property, confidential information, and trade secrets belonging to or originating from Stars in their possession, custody, or control;

v.    Return all property, confidential information, and trade secrets belonging to or originating from Stars;

vi.    Permanently destroy all hard copies of same and to delete the same from all email accounts, computers, cell phones, storage devices, cloud storage accounts, networks, and any other electronic media or storage device or account available to or accessible by Defendants or any third party to which they have given access to the same; and

vii.    Provide independent verification of compliance with said injunction.

b.    Award all available monetary damages, including but not limited to costs and attorneys' fees, as well as any pre- and post-judgment interest as allowed by law;

c.    Order such further and additional relief as this Court may deem just and proper.

### COUNT IV – Copyright Infringement
*(Stars v. Sun Coast, Staples and Back)*

127.    Stars incorporates by reference and realleges the foregoing allegations as if fully set forth herein.

128.    Stars is and at all times has been the owner of all right, title and interest in and to the Stars' Artwork, including all copyright interests.

129.    The Stars' Artwork was created by Stars' employees acting in the scope of their employment.

130.    Pursuant to Section 106 of the Copyright Act, 17 U.S.C. § 506, Stars, as the owner of the copyright in and to the Stars' Artwork, has the exclusive right to reproduce, distribute or display the Stars' Artwork and to prepare derivative works based upon the Stars Artwork.

131.    The U.S. Copyright office has issued a registration for the Stars' Artwork, as noted in Exhibit B.

132.    Defendants incorporated the Stars' Artwork in its entirety on the Vehicle Graphic Hoodies depicted at paragraphs 72 and 82 that have been sold and offered for sale to the public.

133.    Defendants have reproduced, distributed and displayed the Stars' Artwork and have created derivative works based on the Stars' Artwork.

134.    Defendants never received permission from Stars to use or exploit the Stars' Artwork in any way.

135.    Defendants' actions as alleged above constitute willful infringement of Stars' copyright in the Stars' Artwork under Section 106 of the Copyright Act, 17 U.S.C. § 506. Stars has suffered actual damages by virtue of Defendants infringement and Defendants have profits attainable to the infringement.

136.    Stars has suffered actual damages by virtue of Defendants infringement and Defendants have received profits attributable to the infringement.

WHEREFORE, Stars respectfully requests that this Court enter judgment in favor of Stars and against Defendants, and for this Court to:

a.  Enter a preliminary and permanent injunction under 17 U.S.C.§ 502 restraining and prohibiting Defendants from any further reproduction, distribution or display of the Stars' Artwork or any creation of derivative works based on the Stars' Artwork, any further

27

sales or offering for sale of the Vehicle Graphic Hoodies, or any further use or exploitation of the Stars' Artwork;

b. Award all available monetary damages, including actual and/or statutory treble damages, under 17 U.S.C.§ 504, profits of Defendants by virtue of their infringement costs and attorneys' fees under 17 U.S.C.§ 505, as well as any pre- and post-judgment interest as allowed by law;

c. Order such further and additional relief as this Court may deem just and proper.

## COUNT V – Unjust Enrichment
### (*Stars v. Sun Coast, Staples and Back*)

137.    Stars incorporates by reference and realleges the foregoing allegations as if fully set forth herein.

138.    Defendants were enriched by their misappropriation of Stars' Trade Secrets, Stars' Artwok and confidential and proprietary business information.

139.    Defendants' enrichment was at the expense of Stars.

140.    It would be unjust to allow Defendants to retain the enrichment received.

WHEREFORE Stars respectfully requests this Court enter judgment in its favor and against Defendants for unjust enrichment, for damages in the amount of the enrichment unjustly retained, pay Stars' reasonable attorney's fees and costs, award pre- and post-judgment interest, and for such other and further relief as this Court deems just and proper.

## Count VI - Civil Conspiracy
### (*Stars v. Sun Coast, Staples and Back*)

141.    Stars incorporates by reference and realleges the foregoing allegations as if fully set forth herein.

142.    Defendants agreed to misappropriate Stars' Trade Secrets, Stars' Artwork, and confidential and proprietary business information to unjustly enrich themselves at Stars expense

28

as alleged herein with the mutual objective of deriving a material benefit which they otherwise would not have received.

143.   Defendants acted in conspiracy with one another by misappropriating Stars' Trade Secrets and confidential and proprietary business information so they could benefit from the use of such material and could utilize the information wrongfully acquired to their benefit and to Stars' detriment.

144.   In furtherance of their conspiracy, Defendants did knowingly and voluntarily commit acts as alleged herein.

145.   As a result, Stars was damaged.

WHEREFORE, Stars respectfully requests this Court enter judgment in its favor and against Defendants for civil conspiracy, for damages in the amount determined at trial, together with Stars' reasonable attorney's fees and costs, award pre- and post-judgment interest, and for such other and further relief as this Court deems just and proper.

### COUNT VII – Violations of Missouri Computer Tampering Act
(*Stars v. Back*)

146.   Stars incorporates by reference and realleges the foregoing allegations as if fully set forth herein.

147.   Back, knowingly, without authorization, and in furtherance of the conspiracy with Sun Coast and Staples, accessed data or programs residing or existing internal to computers and/or devices owned and maintained by Stars, and then transferred said data or programs to storage devices and/or accounts owned or maintained by him.

148.   Back, knowingly and without authorization or reasonable grounds to believe he had such authorization modified and/or destroyed data or programs residing or existing internal to computers and/or other devices owned by Stars.

149.   Stars was damaged as a result of Back's conduct.

150.    Said actions taken by Back violated the Missouri Computer Tampering Act, Mo. Rev. Stat. §§537.525, 569.095-569.099, entitling Stars to compensatory damages and attorneys fees pursuant to Mo. Rev. Stat. §537.525.1.

WHEREFORE, Stars respectfully requests that this Court enter judgment in its favor and against Back for violations of the Missouri Computer Tampering Act, for damages in the amount determined at trial, together with Stars' reasonable attorney's fees and costs, award pre- and post-judgment interest, and for such other and further relief as this Court deems just and proper.

### COUNT VIII – Breach of Fiduciary Duty/Duty of Loyalty
(*Stars v. Back*)

151.    Stars incorporates by reference and realleges the foregoing allegations as if fully set forth herein.

152.    During the course of Back's employment with Stars, Back owed Stars duties of care, good faith, loyalty, and candor.

153.    Back owed duties to Stars to refrain from taking, disseminating and using its Trade Secrets, Stars' Artowork and confidential and proprietary business information to wrongfully compete with Stars and enrich himself at Stars expense.

154.    Back breached his fiduciary duties to Stars as alleged herein.

155.    As a result of Back's conduct, Stars was damaged.

WHEREFORE Stars respectfully requests this Court find that Back breached his fiduciary duties to Stars, that Back pay Stars damages for his intentional, willful, and malicious conduct, pay Stars' reasonable attorney's fees and costs, award pre- and post-judgment interest, and for such other and further relief as this Court deems just and proper.

### COUNT IX – CONVERSION
(*Stars v. Back*)

30

156.    Stars incorporates by reference and realleges the foregoing allegations as if fully set forth herein.

157.    The laptop issued to Back, and the information contained therein, is owned by Stars.

158.    Stars is entitled to possession of the laptop.

159.    The laptop contains Stars' Trade Secrets and other confidential and proprietary business information.

160.    Despite demand, Back failed and refused to return the laptop.

161.    As a result, Stars was deprived of its right of possession of the laptop, and the Trade Secrets and confidential and proprietary information contained therein, following Back's resignation.

WHEREFORE Stars respectfully requests this Court enter judgment in its favor and against Back for conversion, that Back pay Stars its damages in an amount to be proven at trial, pay Stars' reasonable attorney's fees and costs, award pre- and post-judgment interest, and for such other and further relief as this Court deems just and proper.

Dated: May 2, 2024                  Respectfully submitted,

**CAPES, SOKOL, GOODMAN & SARACHAN, P.C.**

By:   /s/  *Amy L. Fehr*
        Amy L. Fehr, MO # 60033
        Zachary R. McMichael, MO # 68251
        8182 Maryland Ave., Fifteenth Floor
        St. Louis, Missouri 63105
        Phone: (314) 721-7701
        Fax:    (314) 721-0554
        fehr@capessokol.com
        mcmichael@capessokol.com

*Attorneys for Plaintiff, Stars Design Group, Inc.*

31

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing was served on all counsel of record on May 2, 2024, via the Court's electronic filing system.

_/s/ Amy L. Fehr_

## VERIFICATION

STATE OF MISSOURI     )
                                )    ss.
COUNTY OF ST. LOUIS     )

        I, Bret D. Schnitker, as Chief Executive Officer of Stars Design Group, Inc., being duly sworn on oath, state that I have read the foregoing Verified Complaint for Damages and Injunctive Relief and the allegations contained therein are true and accurate to the best of my knowledge and belief.

_____
Bret D. Schnitker
Chief Executive Officer, Stars Design Group, Inc.

        The foregoing Verification of the allegations contained in the Verified Complaint for Damages and Injunctive Relief by Stars Design Group, Inc. was subscribed and sworn to before me this 01 day of May, 2024.

_____
Notary Public

My Commission Expires:

June 01, 2024

MARBLE A DAVIS
Notary Public - Notary Seal
St. Louis City - State of Missouri
Commission Number 20857269
My Commission Expires Jun 1, 2024